# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| ANTONIO NICHOLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:20-cv-00028-LSC-HNJ |
| | ) | |
| GEORGE ADAMS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The magistrate judge filed a report and recommendation on June 14, 2021, recommending the court grant defendants' motion for summary judgment on all of plaintiff's claims. (Doc. 34). The magistrate judge advised plaintiff of his right to file specific, written objections to the report and recommendation within 14 days. Plaintiff has filed timely objections. (Doc. 39).

## I.  Factual Background

Plaintiff, an adherent of Metu Neter, brought this action claiming the defendants violated his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a), *et seq*., the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment, by failing to allow religious accommodations so he could properly observe his religion. (Doc. 1 at 3, 6). Based on his belief defendants imposed burdens upon his religion that serve no

compelling government interest, plaintiff sought declaratory, injunctive, and monetary relief.  (Doc. 1 at 9-10).

Plaintiff named as defendants George Adams, the chaplain at Donaldson,[1] and Thomas Woodfin,[2] the Pastoral Programs Supervisor for the Alabama Department of Corrections ("ADOC").  Defendants do not question the validity of plaintiff's claim to be a follower of the Metu Neter religion.  (*See e.g*., Doc. 19-1 at 2).  Rather, they assert they have accommodated plaintiff's religious beliefs in accordance with all applicable laws and regulations to the same extent as other religions in the prison. The magistrate judge recommended that defendants' special report (Doc. 19), construed as a motion for summary judgment, be granted.  (Doc. 34).

## II.  Relevant Legal Standards

For each of his objections, plaintiff asserts that *Holt v. Hobbs*, 574 US 352 (2015), the First and Fourteenth Amendments, and the Religious Land Use and

---

[1] Adams explained that in his role as chaplain, he may only allow religious accommodations and activities previously approved by the Religious Activity Review Committee ("RARC").  (Doc. 19-1 at 1).  When Adams receives a request for accommodations not previously approved by the RARC, he must submit that request to the warden, and, if denied by the warden, then to the RARC. (Doc. 19-1 at 2).

[2] Defendant Woodfin, as Pastoral Programs Supervisor for ADOC, co-chairs the RARC.  (Doc. 19-3 at 1; Doc. 27-1 at 2).  The RARC reviews inmates' religion-based requests and creates Administrative Regulations for religious observances under the ADOC policy.  (Doc. 19-3 at 1). Using an Inmate Request for Religious Assistance ("IRRA") form, an inmate may request ADOC approve new religious practices.  (Doc. 19-3 at 1-2).  The inmate must submit the form to the prison chaplain, who considers whether the request is permissible under current ADOC regulations.  (Doc. 19-3 at 1-2).  If not, the chaplain forwards the form to the warden, who may either approve the request as consistent with existing ADOC policies, or forward the request to the RARC.  (Doc. 19-3 at 2).

Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a), *et seq.,* require the court to consider the facts in plaintiff's favor, deny the magistrate judge's report and recommendation, and remand this cause to the magistrate judge for further factual development.

A. *RLUIPA*

*Holt v. Hobbs* considered a Muslim prisoner's claim that "no beard" policies in prison violated his rights under RLUIPA. *Id*., 574 U.S. at 360-361. The Court held "RLUIPA protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief,' § 2000cc–5(7)(A), but, of course, a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Id.* In *Holt*, the Court required plaintiff prove "the Department's … policy substantially burdened" his exercise of religion. *Id*., at 361.

Thus, to establish a *prima facie* case under RLUIPA, a plaintiff must demonstrate "the challenged law, regulation, or practice substantially burdens his exercise of religion." *Knight v. Thompson*, 797 F.3d 934, 943 (11th Cir. 2015). While the court should not examine the "centrality of a particular religious tenet in undertaking the substantial burden analysis," *Smith v. Allen,* 502 F.3d 1255, 1278 (11th Cir. 2007) *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277, 286-87 (2011), a RLUIPA plaintiff must demonstrates that the government's denial

of a particular religious item or observance placed more than a "mere incidental effect or inconvenience" on his religious practice, *Thai Meditation Ass'n of Ala., Inc., v. City of Mobile*, 980 F.3d 821, 830 (11th Cir. 2020).  In *Smith v. Governor for Alabama*, 562 F. App'x 808 (11th Cir. 2014), the Court explained:

> If the word 'substantial' in the statutory phrase 'substantial burden,' 42 U.S.C. § 2000cc–1(a), is to retain any meaning, it must, at a minimum, be construed as requiring something more than solely the denial of a request that is sincere.  An alternate approach ... would result in the word 'substantial' in § 2000cc–1(a) as being mere surplusage, since every governmental action denying a requested item to be used in religious observance would give rise to a prima facie RLUIPA claim.

*Id.*, at 813 (alterations in original).

The burden then shifts to the defendant to prove the denial in question  "is the least restrictive means of furthering a compelling governmental interest."  *Knight*, 797 F.3d at 943 (citing 42 U.S.C. § 2000cc-2(b)).  RLUIPA provides only prospective, injunctive relief.  *Davila v. Marshall,* 649 F. App'x 977, 980 (11th Cir. 2016) ("the district court correctly found that RLUIPA does not authorize claims for monetary damages against prison officials in their individual capacities").

### B.  First Amendment

The First Amendment, applied to the states via the Fourteenth Amendment, "prohibits government from making a law ... prohibiting the free exercise (of religion)."  *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  To state a claim under the Free Exercise Clause, a plaintiff must plead facts showing a "constitutionally

4

impermissible burden on a sincerely held religious belief." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1257 (11th Cir. 2012); *see also Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989) ("The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice ....").

While prison regulations which impinge on prisoners' constitutional rights are valid if they are "reasonably related to legitimate penological interests," *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987), a policy substantially burdens a prisoner's religious exercise if it places significant pressure on a religious adherent to conform his or her behavior. *Robbins v. Robertson*, 782 F. App'x 794, 801-02 (11th Cir. 2019) (citing *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)).  In evaluating the reasonableness of a prison regulation, the court must consider the four factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987):

> (1) whether there is a "valid, rational connection" between the regulation and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to the inmates; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the regulation represents an "exaggerated response" to prison concerns.

*Hakim v. Hicks*, 223 F.3d 1244, 1247-48 (11th Cir. 2000) (citing *Turner*, 482 U.S. at 89-91).

### C. Fourteenth Amendment

A Fourteenth Amendment Equal Protection Clause claim requires a plaintiff to "demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y Dep't of Corr.*, 467 F.3d 1311, 1318-19 (11th Cir. 2006). Proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).

## III. The Plaintiff's Objections

### A. Ceremonial Grounds

Plaintiff does not dispute that under RLUIPA, his claim for sacred ceremonial grounds was rendered moot when defendants authorized Metu Neter adherents' use of such grounds on February 19, 2021. Rather, plaintiff now asserts he is due damages for the lack of use of such grounds from July 6, 2017, until February 19, 2021. (Doc. 39 at 1-2). While plaintiff's First and Fourteenth Amendment claims allow for damages, plaintiff did not show, or even allege, how the lack of ceremonial grounds "substantially burdened" his religious exercise as required under the First Amendment. *See e.g.*, *Robbins*, 782 F. App'x at 801-02. Nor has plaintiff demonstrated that the previous failure to provide ceremonial grounds resulted from

discriminatory intent or purpose, as needed to show a violation of the Equal Protection Clause. *Village of Arlington Heights*, 429 U.S. at 265. This objection is therefore overruled.

Plaintiff also objects to the conclusion that requiring Metu Neter to share ceremonial grounds with Wiccins and Odinists does not violate any federal law. (Doc. 39 at 2-3). Yet, the requirement that Metu Neter share grounds demonstrates that defendants have treated Metu Neter practitioners the exact same as the Odinists and the Wiccans. Plaintiff points to no reason why the lack of dedicated---as opposed to shared---grounds would impact his practice of Metu Neter in any manner.

Plaintiff points to Administrative Regulation No. 462 in support of his objection, arguing that because only Wiccans may be present during Wiccan services, requiring Metu Neter to share this sacred space violates his religious rights. (Doc. 39 at 3). However, plaintiff fails to set forth any basis to support a finding that allowing only Wiccans be in the sacred grounds during Wiccan services impacts Metu Neter using the same grounds at other times. This objection is overruled.

B. *Religious Diet, Feasts, Music, and Beard Exemptions*

Plaintiff generally asserts that defendants' procedures to approve or deny his religious accommodation requests are unconstitutional. (Doc. 39 at 4). He argues that defendants imposed substantial burdens on his exercise of religion by denying his requests for a religious diet, feasts, a beard exemption, and music. (Doc. 39 at

7

4).  He alleges that he "met the requirements of due process under the Fourteenth Amendment when his submitted his IRRA religious request claims to defendants on IRRA form, complaints, and grievances."  (Doc. 39 at 5).

To the extent plaintiff now challenges the process used by ADOC to approve or deny religious requests, that claim was not raised in his complaint.  This court need not consider arguments plaintiff first raises in his objections to a magistrate judge's report and recommendation.  *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009).  This principle gains even more traction where, as here, plaintiff raises an entirely new claim under the guise of objections.  *See Killingsworth v. Correctional Medical Services*, 2013 WL 1180769, *1 (N.D. Ala. Mar. 19, 2013); *Shepherd v. Corizon, Inc*., 2013 WL 1561513, *1 (S.D. Ala. Apr. 12, 2013) (citing *Williams*, 557 F.3d at 1291-92) (noting potential for "gamesmanship" which would occur if "litigants foist on district courts arguments and evidence they neglected to present to the magistrate judge."); *see also* report and recommendation (advising plaintiff that "[o]bjections should not contain new allegations, present additional evidence, or repeat legal arguments.") (Doc. 34 at 31).  Based on the foregoing, the court declines to address plaintiff's challenge to ADOC's process for approving religious accommodations.

Plaintiff's other argument---that defendants' failure to comply with their own regulations renders the report and recommendation incorrect (Doc. 39 at 5)---has no

basis in law.  That state law or state agencies prescribe certain procedures does not mean those procedures acquire federal constitutional dimensions.  *See e.g., Sandin v. Connor*, 515 U.S. 472, 481–82 (1995) (observing that prison regulations are not intended to confer rights or benefits on inmates but are merely designed to guide correctional officials in the administration of prisons); *United States v. Caceres*, 440 U.S. 741, 751–52 (1979) (stating "violations of agency regulations …. do not raise constitutional questions); *Magluta v. Samples*, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004) (noting that "procedural requirements set out in [an administrative] regulation are not themselves constitutional mandates."); *Hilderbrandt v. Butts*, 550 F. App'x 697, 700 (11th Cir. 2013) ("Hilderbrandt's due process claim misses the mark by equating state-law administrative procedure with constitutional due process. Federal due process does not require that state prison officials strictly comply with administrative regulations….").

Plaintiff's more detailed objections based on the foregoing are discussed below:

### 1. Religious Diet

Plaintiff objects to the recommendation that this claim be found moot because he personally has not seen any administrative regulations on religious diet meals in

the prison or the prison law library.[3]  (Doc. 39 at 6).  Plaintiff does not dispute that the prison provides alternative meals which accommodate the very diet plaintiff claims his religion requires.  (Doc. 39 at 6).  Rather, plaintiff's sole objection lies in the fact that he has not read any Administrative Regulations which provide for an alternative diet.  (Doc. 39 at 6-7).  This objection is overruled.

### 2. Musical Instruments

Plaintiff objects to the finding that his request to use musical instruments in the chapel is moot.  (Doc. 39 at 7). Plaintiff asserts nothing in writing gives plaintiff permission to use chapel instruments during Metu Neter services.  (Doc. 39 at 7-8). In plaintiff's supplemental response, he agreed that Metu Neter has authority to use musical instruments, but complained defendants have not provided Metu Neter a "time and day to use the musical instruments in the chapel.  Defendants need to write down a time and day for Plaintiff and Metu Neter members to use to musical instruments in the chapel and post it throughout the institution."  (Doc. 33 at 11). Lacking from his pleadings was any allegation that Metu Neter has been denied access to these instruments.  Because plaintiff does not dispute he has access to the

---

[3]  Administrative Regulation No. 462, submitted to the court by plaintiff, includes the statement, "[t]he menu is planned to be nutritionally adequate for those inmates who may be on vegan diets due to religious preferences."  (Doc. 23 at 71).  In the supplement to the special report (Doc. 27-1), Woodfin references Administrative Regulation 701, which states "ADOC provides a pork free menu for those inmates whose religious preference stipulates no pork."   Available at http://www.doc.state.al.us/docs/AdminRegs/AR701.pdf

very instruments he claims he needs to worship properly, he failed to establish a *prima facie* case under RLUIPA, or the First Amendment.

### 3. Beard Exemption

Plaintiff objects to the recommendation that defendants' motion for summary judgment be granted on the issue of beard exemptions.  He argues the form he submitted for a beard exemption proves he has requested the accommodation,  thus creating a genuine issue of material fact.  (Doc 39 at 8-9).  Defendants agreed they had received this form from plaintiff.  (Doc. 27-1 at 11).  However, the RARC has not approved the facial hair exemption for Metu Neter.  (Doc. 27-1 at 10-11). Defendants explain that ADOC requires a faith group to receive an exemption to the beard policy before individual members of that religion may submit a Religious Exemption request (Beards) form 462-B to the institutional chaplain.  (Doc. 27-1 at 10; *see also* Doc. 23 at 71 (noting the "Facial Hair Exemption" is "[l]imited to specifically approved religions.").   Plaintiff fails to demonstrate how requiring each religion that desires a facial hair exemption to receive approval substantially burdens his religious beliefs.

Perhaps more importantly, plaintiff fails to identify any religious significance a beard has, either in the Metu Neter faith generally, or as he chooses to practice it. On this basis, plaintiff fails to establish his prima facie case that the absence of a

beard has caused more than an inconvenience on his religious exercise.  *See Thai Meditation Asso*., 980 F.3d at 830 (citing *Midrash,* 366 F.3d. at 1227).

### 4.  *Feasts*

The magistrate judge recommended granting defendants' motion for summary judgment on plaintiff's claim for feasts because plaintiff failed to establish that feasts were a recognized component of his religious practice.  (Doc. 34 at 21-26).  Plaintiff objects, stating Adams' recollection that plaintiff once handed him a paperback book that said "Metu Neter" on it, and his more recent citations to other sources, should suffice to establish authoritative sources requiring feasts.  (Doc. 39 at 10).  Plaintiff further states he included a request for feasts on the same IRRA form defendants used to grant his ceremonial grounds request.  (Doc. 39 at 11).

Defendants explained they originally denied the requests for feasts because they were "unable to validate the existence of this ritual observation" and because they had security concerns regarding outside food being brought into the facility. (Doc. 19-3 at 2-3).  In their supplemental response, Woodfin asserted plaintiff failed to request a specific day in which to hold the "fast breaking feast."  (Doc. 27-1 at 8). Woodfin claimed "the Plaintiff has not presented RARC with a request for the *one* most important holy day of Kemeticism on which to feast …."[4]   (Doc. 27-1 at 8).

---

[4]  As noted by the magistrate judge, defendants granted some of plaintiff's requests in response to this litigation, and plaintiff provided the court with sources to support other requests, which he failed to provide to defendants before filing this action.  Moreover, plaintiff continued to file IRRA

The Eleventh Circuit instructs that, "[w]hile … courts are not to inquire into the centrality of a particular religious tenet in undertaking the substantial burden analysis, at a minimum the substantial burden test requires that a RLUIPA plaintiff demonstrate that the government's denial of a particular religious item or observance was more than an inconvenience to one's religious practice." *Smith v. Governor for Alabama*, 562 F. App'x at 813 (citing *Smith v. Allen*, 502 F.3d at 1278-79). Plaintiff's prior failures to identify his most holy day and to provide authoritative sources translate into a failure to demonstrate that the lack of feasts caused anything more than a mere inconvenience on his religious exercise. The court overrules this objection.

## C. Family Nights

Plaintiff objects to the finding that his request for family nights lacked merit, based on his belief the magistrate judge failed to consider "the Faith based Honor dorm Administrative Regulation." (Doc. 39 at 12). Plaintiff does not provide any further explanation of this objection. As plaintiff has failed to demonstrate the lack of "family nights" infringes on his religious beliefs in any way, this objection lacks merit.

---

forms in response to defendants' pleadings. As of the date the court received plaintiff's objections, July 16, 2021, the claim for feasts had been narrowed to whether or not the RARC would approve Metu Neter's request to recognize the Winter Solstice as its most important feast day. (*See e.g.,* Doc. 34 at 25-26 (tracking the evolution of this claim)).

## III. Conclusion

Having carefully reviewed and considered *de novo* all the materials in the court file, including the report and recommendation, the magistrate judge's report is hereby **ADOPTED** and the recommendation is **ACCEPTED**.

The court **EXPRESSLY FINDS** that no genuine issues of material fact remain and defendants are due summary judgment on plaintiff's claims as a matter of law.

A Final Judgment will be entered.

**DONE** and **ORDERED** on July 29, 2021.

_____
L. Scott Coogler
United States District Judge

160704

14